## Perley C. Bell v. Town of Grafton

[328 A.2d 408]

No. 91-73

Present: Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)

Opinion Filed October 1, 1974

Motion for Reargument Denied December 3, 1974

*Natt L. Divoll, Jr., Esq.*, Bellows Falls, for Plaintiff.

*Richard M. Gale, Esq.*, Brattleboro, for Defendant.

**Barney, C.J.** This controversy is concerned with a claim for specific performance of an alleged agreement for the sale of certain premises by the defendant town to the plaintiff. The lower court refused specific performance, grounding its decisions on both the Statute of Limitations (12 V.S.A. § 511) and the Statute of Frauds (12 V.S.A. § 181). We affirm.

In 1964, at a time when the selectmen had general authorization to sell town land, the selectmen orally agreed to sell, and the plaintiff to buy, a lot known as the Stebbins lot, part of which was being used by the town as a dump. The plaintiff gave the selectmen his personal check for one thousand dollars, which they still hold, with a two thousand dollar balance to be paid on delivery of the deed.

A deed was tendered in 1964 reserving 2.03 acres out of the eighty-acre parcel for use by the town as a dump. The plaintiff rejected this deed because it contained no clause providing for reversion of title to the plaintiff when the town ceased to use it as a dump. This deed was, therefore, never executed.

Sentiment in the town apparently began to run against the sale, and the selectmen refused to draft another conveyance until after the 1965 town meeting. This sentiment expressed itself at that meeting by a vote against the sale. Thereupon, the selectmen refused and continue to refuse to convey without voter approval. On or about January 12, 1966, the selectmen put their refusal in writing in a letter to the plaintiff.

That letter described the transaction as one involving the sale of Stebbins lot to the plaintiff for three thousand dollars as previously stated, and described the sale as reserving to the town enough land for its dump. This is the only writing signed on behalf of the town describing the terms of the sale. The plaintiff relies on it as a memorandum to satisfy the Statute of Frauds.

■ Since that writing, by not including the reversionary right claimed by the plaintiff, is not a memorandum of the sale as the plaintiff claims it to be, it cannot support specific performance or satisfy the Statute of Frauds. It is, rather, a memorial demonstrating that agreement on the terms of sale was, in fact, never reached.

■ The Statute of Limitations is also a bar to this action. The very instrument the plaintiff relies on as a memorandum, the letter from the selectmen, was a statement of the selectmen's refusal on behalf of the town to convey. The action to enforce the claimed transaction was commenced on February 29, 1972, more than six years after the selectmen's letter and beyond the six-year limitation of 12 V.S.A. § 511.

■ The plaintiff puts forth arguments relating to estoppel and part performance to forestall the prohibitions of the Statute of Frauds and of Limitations. The trial court found, and the facts sustain, no action or representations on the part of the town that acted to induce forebearance on the part of the plaintiff such as would bring into play the doctrine of *McLaughlin* v. *Blake,* 120 Vt. 174, 177–80, 136 A.2d 492 (1957). The facts likewise support the court's determination that the activities of the plaintiff in making improvements on the premises were entirely assignable to his situation as licensee from the town to use these premises as a parking area in conjunction with certain motorcycle races. Possession under a purchase contract sufficient to remove the Statute of Frauds barrier was not established, and the court's decision must be sustained.

■ More important, the root difficulty is that there was no contract arrived at, in terms of a mutual acceptance of a single set of terms and conditions. At all times prior to the selectmen's insistence that there would be no conveyance without agreement by town vote, the plaintiff was countering the selectmen's offer by his own insistence on a reversion they were not disposed to grant. After the selectmen changed their offer to require consent of the voters, and after an adverse vote by the town, it is argued, but not found as a fact, that the plaintiff attempted to indicate he would accept the selectmen's original terms. Even if this were so, the prior

4

offer was already altered and unavailable to him on the former terms. Since permission of the town has never been obtained, consummation of a new contract has never been possible, either. In the classic phrase, there never has been a "meeting of the minds".

Since it is of the essence of an action for specific performance that there be a specific and identifiable agreement between the parties to be enforced, the lack of a contract or mutual acceptable agreement is fatal to the action. *Cook* v. *Holden*, 113 Vt. 409, 413, 35 A.2d 353 (1944). The judgment below must stand.

*Judgment affirmed.*