674 F.2d 952
 10 Fed. R. Evid. Serv. 216
 REPUBLIC SECURITY CORPORATION, Plaintiff, Appellant,
v.
The PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, Defendant, Appellee.
REPUBLIC SECURITY CORPORATION, Plaintiff, Appellee,
v.
The PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, Defendant, Appellant.
 Nos. 81-1518, 81-1575.
 United States Court of Appeals,
First Circuit.
 Argued Feb. 1, 1982.
Decided March 23, 1982.
 
 Antonio M. Bird, Jr., San Juan, P. R., with whom Bird & Bird, San Juan, P. R., was on brief, for Republic Security Corp.
 Pedro Toledo Gonzalez and Geigel, Silva, Irizarry & Toledo, Old San Juan, P. R., on brief, for The Puerto Rico Aqueduct and Sewer Authority.
 Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.
 BREYER, Circuit Judge.
 
 
 1
 On June 2, 1960, the Puerto Rico Aqueduct and Sewer Authority ("Aqueduct") agreed with Mechanical Contractors, Inc. ("Mechanical") that Mechanical would carry out certain construction work. Mechanical assigned to Republic Security Corporation ("Republic") on November 23, 1960, "any and all sums of money now due or to become due" under this contract, "including any and all sums of money due or to become due ... as a result of claims of any nature arising out of said contract." Mechanical found the work far more difficult than it had initially expected and concluded that it had agreed to the contract through "error." Civil Code, Articles 1217-18, 31 L.P.R.A. §§ 3404-05. Consequently, on June 2, 1961, it sued Aqueduct in the Superior Court of Puerto Rico, asking the court to annul the contract. For reasons not revealed in the record, the litigation took 15 years. On December 3, 1976, the Superior Court annulled the 1960 contract. It also ordered restitution under Article 1255 of the Civil Code, 31 L.P.R.A. 3514,[1] requiring Aqueduct to pay Mechanical $248,980.44 "representing the construction expenses incurred by Mechanical ... not reimbursed by Aqueduct" and also to pay "the interest on said amount from the date of the filing of the complaint."
 
 
 2
 The Supreme Court of Puerto Rico reviewed the Superior Court's decision, affirming it as to annulment, but reversing it as to restitution. In its unpublished opinion of December 28, 1977, that court reasoned that Mechanical had assigned to Republic all its monetary claims, of which the claim for restitution was one. Hence, Mechanical while entitled to seek an annulment, could not seek restitution. Since Republic was not a party to the suit, the restitution award was improper and was set aside.
 
 
 3
 Two years later, on January 10, 1980, Republic filed this diversity action in the federal district court for Puerto Rico, seeking the restitution that Mechanical had failed to obtain. On August 4, 1981, the district court granted restitution, awarding Republic $248,980.44 along with interest from 1961 determined at a 6 percent rate. Both parties appealed. Aqueduct attacks the decision granting restitution; Republic attacks the interest rate figure of 6 percent. Judging these appeals under the law of Puerto Rico, we affirm the district court's decision in all respects.
 
 Aqueduct's Appeal
 
 4
 1. Aqueduct argues that Republic's claim was barred by the applicable 15 year statute of limitations, Civil Code Article 1864, 31 L.P.R.A. § 5294.[2] We do not agree. Civil Code Article 1869, 31 L.P.R.A. § 5299, states that the "time for the prescription of all kinds of actions, when there is no special provision to the contrary, shall be counted from the day on which they could have been instituted." (Emphasis added.) The commentators make clear that this means that the statute begins to run only if the relevant cause of action has actually arisen-if the plaintiff has a vested legal right. The statute of limitations does not run if there remains a legal obstacle to the assertion of the right, if it is legally contingent or "expectant." F. de Castro y Bravo, Temas de derecho civil 151 (1972). Republic's action is brought under Civil Code Article 1255, 31 L.P.R.A. § 3514, which provides for restitution "when the nullity of an obligation has been declared." Since the contract between Mechanic and Aqueduct was not finally declared void until 1977, Republic's claim for restitution did not become valid, and the statute of limitations did not begin to run, before that date.
 
 
 5
 Aqueduct seeks to escape this logic by pointing out that Article 1255, which creates the right to restitution, creates in the same sentence the right to seek annulment of the contract. The entire article reads,
 
 
 6
 When the nullity of an obligation has been declared, the contracting parties shall restore to each other the things which have been the object of the contract with their fruits, and the value with its interest, without prejudice to the provisions contained in the following sections.
 
 
 7
 31 L.P.R.A. § 3514. This article provides both for a judicial declaration that a contract is void and also creates a right to restitution, both of which claims may be asserted in the same action. F. de Castro y Bravo, Tratado practico y critico de derecho civil, tome X, 504-05 (1971); R. Ruiz Serramalera, Derecho civil: El negocio juridico, 406 n.28 (1980). And, Republic could have intervened in Mechanical's 1980 Superior Court action under Puerto Rico Rule of Civil Procedure 17.1.[3] Consequently, argues Aqueduct, 1960 is when Republic's restitution action "could have been instituted."
 
 
 8
 We reject this argument because the words "could have been instituted" do not refer to the type of procedural convenience that Rule 17.1 and Article 1255 offered Republic-permission to intervene in a proceeding that is later likely to concern it. Rather, those words, as previously pointed out, refer to the existence of a noncontingent legal claim or cause of action. The commentators state that even when a party seeks both a declaration that a contract is void and restitution in the same action, there can be no restitution without the declaration of invalidity; only when the contract is declared void, and not before, does the obligation to provide restitution arise. F. de Castro y Bravo, Tratado, at 505; F. Clemente de Diego y Gutierrez, Instituciones de derecho civil espanol, tome II, 112-13 (1930); A. Martinez Ruiz, El Codigo civil interpretado por el Tribunal Supremo, tome VIII, 690 (1907). Prior to that declaration, Republic had only a contingent claim, an "expectation" of being able to ask for restitution. Therefore, in our view, the courts of Puerto Rico would hold that, since Republic's restitution claim was not perfected until 1977, the statute of limitations did not begin to run until that time.
 
 
 9
 2. Aqueduct claims that the district court erred in refusing to allow it to relitigate the claim that the contract is void. The court found that such relitigation was barred by the doctrine of res judicata both under Puerto Rico Code of Civil Procedure, Article 421, 32 L.P.R.A. 1793, which provides that a prior judgment
 
 
 10
 in respect to the matter directly adjudged, (is) conclusive between the parties and their successors in interest by title ... litigating for the same thing under the same title and in the same capacity ...,
 
 
 11
 and under Article 1204 of the Civil Code, 31 L.P.R.A. 3343. Aqueduct notes, however, that for this latter article states that
 
 
 12
 the presumption of res judicata (to) ... be valid in another suit, ... there must be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.[4]
 
 
 13
 Aqueduct argues that there is not sufficient "identity" between Republic and Mechanic. That is to say, in Aqueduct's view, the suits involve different parties.
 
 
 14
 Aqueduct is wrong, however, for Article 1204 goes on to state specifically that
 
 
 15
 there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit ....
 
 
 16
 Republic, as an assignee of Mechanical's rights under its contract with Aqueduct, is Mechanical's "legal representative." As an assignee by "singular title," J. Guasp, Derecho procesal civil, tome I, 560 (3d ed. 1968), it possesses sufficient "identity" with Mechanical to satisfy the demands of Article 1204. See, e.g., Hernandez v. Benet, 25 P.R.R. 55, 58-59 (1917); Vasquez v. Santos, 54 P.R.R. 587, 592 (1939). This is obvious once one realizes that the Spanish word that the official translation renders as "legal representative" is "causahabientes," a word more properly translated as "successor in interest." See, L. Robb, Dictionary of Legal Terms, Spanish-English and English-Spanish 23 (1955). Cf. Code of Civil Procedure, Article 421, supra. We note that, in cases of discrepancy "the Spanish text shall be preferred." Civil Code, Article 13, 31 L.P.R.A. § 13. See Trias Monge, La crisis del derecho en Puerto Rico, 49 Rev.Jur.U.P.R. 1, 14 (1980).[5]
 
 
 17
 Since principles of res judicata make the prior judgment binding upon Aqueduct, we need not consider the issues Aqueduct raises about collateral estoppel, for it seems clear that res judicata, under the law of Puerto Rico, binds Aqueduct upon such questions as the validity of its contract with Mechanical. See Gomez Calero, La cosa juzgada, 59 Revista General de Legislacion y Jurisprudencia 420, 429-31 (1969); E. Gomez Organeja & V. Herce Quemada, Derecho procesal, vol. I, 362-63 (4th ed. 1955); J. Guasp, supra at 553-54.[6]
 
 
 18
 3. Aqueduct seeks to use the finding of "identity of parties" as a two-edged sword. If Republic is the same party as Mechanical, it argues, then the first suit "Mechanical v. Aqueduct" must have been precisely equivalent to the suit "Republic v. Aqueduct ;" and, therefore, Republic is barred from bringing its restitution claim because it is a claim that "could have been litigated and adjudicated in a previous suit between the same parties and about the same cause of action"-i.e., it is barred by principles of res judicata. Mercado Riera v. Mercado Riera, 100 P.R.R. 939 (1972).[7] The short answer to this ingenious exercise in logic is that Mechanical could not bring the restitution claim in the first suit. That is precisely what the Supreme Court of Puerto Rico held. Thus it is not an issue that could have been litigated in the first suit-at least not unless Republic joined the first suit. But, joinder by Republic was permissive, not mandatory. See Rule 17.1 of Civil Procedure (1968), supra at n.3. And, we see no reason to make joinder mandatory in effect by barring a subsequent suit under principles of res judicata. Moreover, there is nothing illogical about saying that Republic is the same party as Mechanical, except as to issues arising out of the assignment relation itself. And nothing in Mercado Riera cited by appellants, holds to the contrary. Cf. 3A Moore's Federal Practice, P 21.04(1) (2d ed. 1970).[8]
 
 
 19
 4. Aqueduct makes two evidentiary points. First, it claims that the district court erred in allowing into evidence a transcript from the original Mechanical/Aqueduct lawsuit, of testimony given by Leo Spinelli, Mechanical's accountant. The testimony was related to how much money Mechanical had spent on the project and thus to how much restitution Aqueduct owed. Federal Rule of Evidence 804(b)(1) specifically states that when a "declarant is unavailable as a witness," a court need not exclude as hearsay his "testimony given as a witness at another hearing of ... a different proceeding ... if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by ... cross ... examination." Contrary to Aqueduct's contentions, it is clear that Aqueduct had adequate motive and opportunity to cross examine Spinelli at the original trial, for the issues were the same. Moreover, in light of the affidavits presented by Republic and Spinelli stating that Spinelli could not come to Puerto Rico for the second trial, the district court's finding that he was "unavailable" within the terms of Rule 804(b)(1) was within the scope of the judge's discretion. See Bailey v. Southern Pacific Transportation Co., 613 F.2d 1385, 1390 (5th Cir.), cert. denied, 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980); Castilleja v. Southern Pacific Co., 445 F.2d 183, 186 (5th Cir. 1971).
 
 
 20
 Second, Aqueduct claims that certain of the transcripts admitted were not properly attested. Fed.R.Civ.P. 44(a), 80(c). Aqueduct admitted, however, at Republic's request that the exhibits in question were "genuine" and "authentic," and it cannot now escape the effects of that prior admission. Fed.R.Civ.P. 36(b).
 
 
 21
 5. Aqueduct finally claims that the district court was wrong to require it to pay Republic interest on the expenses that Mechanical had incurred from the time that Mechanical first brought its original suit. Aqueduct points out that Rule 44.3(b) of the Commonwealth's Rules of Civil Procedure provides for interest to be paid from the time "judgment ... was entered" unless the losing party has been "obstinate," in which case an earlier date may be appropriate.[9] ] Aqueduct correctly points out that it has not been found "obstinate." But that fact does not dispose of the matter, for its obligation to pay interest from an earlier date flows not from Rule 44.3(b), but rather directly from the restitution provision of the Civil Code, Article 1303. That provision has been authoritatively interpreted to require an interest payment, as a substantive element of restitution, at least from the time that a suit to void the contract was brought. Judgments of the Supreme Court of Spain of July 10, 1902, 94 Jurisprudencia Civil 99; February 17, 1922, 155 Jurisprudencia Civil 270. See J.M. Pedreira Castro, El Codigo civil a traves de la jurisprudencia, tome II, 895 (undated). See also A. Weill & F. Terre, Droit civil: Les obligations, 358 (2d ed. 1975); B. Stark, Droit civil: Obligations, 508 (1972). Compare Judgment of the Supreme Court of Spain of December 11, 1940, VII Aranzadi no. 1,132 with Judgment of the Supreme Court of Cuba of June 23, 1914, La jurisprudencia al dia (civil) 235. We are aware of nothing in the Commonwealth's Rule of Civil Procedure 44.3(b) that either implicitly or explicitly suggests that parties are relieved of obligations to pay interest imposed upon them by other substantive provisions of the Civil Code.
 
 
 22
 For the reasons given, we reject all of Aqueduct's arguments.
 
 Republic's Appeal
 
 23
 Republic raises one question: Was the district court wrong in calculating interest at 6 percent? Should the court instead have calculated interest at 10 percent-a rate closer to the prime interest rate during the years for which interest was awarded? The district court used the 6 percent figure because Article 1061 of the Civil Code of Puerto Rico specifically states, "(u)ntil another rate is fixed by the Government, interest at the rate of six percent per annum shall be considered as legal." 31 L.P.R.A. § 3025. And, the commentators, interpreting the restitution provision under which interest was awarded, namely Civil Code Article 1255, have reasoned persuasively that the interest payable under this Article is "to be established in accordance with the legal rate." J. Ma. Manresa y Navarro, Comentarios al Codigo civil espanol, tome VIII, vol. 2, 870 (6th ed. 1967). The single exception which the Code arguably provides-when the parties have bargained for a different rate-Civil Code, Article 1649, 31 L.P.R.A. § 4591 does not apply here, for the contract is silent.
 
 
 24
 Republic, noting "the unfairness" of an interest rate so much lower than what it might have earned on its money had it possessed it at the time, seeks to circumvent this language in several ways. First, it claims by analogy to the law of admiralty and certain other common law doctrines, that the interest rate under Article 1255 is left to the discretion of the trial court. See, e.g., United States v. The M/V Zoe Colocotroni, 602 F.2d 12, 13-14 (1st Cir. 1979). In interpreting the Civil Code of Puerto Rico, however, authoritative commentaries on analogous provisions of the Spanish Civil Code are more persuasive than common law analogies, which are inapplicable but for purposes of comparative analysis. See, e.g., Valle v. American International Insurance Co., 108 D.P.R. 692, 695 (1979); Gierbolini v. Employers Fire Insurance Co., 104 D.P.R. 853, 855 (1976); Lausell Marxuach v. Diaz de Yanez, 103 D.P.R. at 535. As just mentioned, the relevant commentary states that interest in a restitution case is to be fixed at the legal rate.
 
 
 25
 Second, Republic argues that the government has effectively fixed "another rate." It points to the higher rates of interest that the Commonwealth has established under Commonwealth Law No. 83 of July 3, 1980 and under 10 L.P.R.A. § 998 et seq. The first of these statutes, however, deals with the "Maximum interest to be earned by bonds, notes and other obligations of the Commonwealth" and the second of these concerns "maximum rates that shall be demanded or received" in certain other transactions. (Emphasis added.) Cf. Buil v. Banco Popular de Puerto Rico, 69 P.R.R. 238, 247 (1948); Vega v. Garcia, 61 P.R.R. 777, 779 (1943). Neither of them concerns the legal rate of interest for purposes of court actions. It is perfectly reasonable for governmental regulation of contractual interest rates to take the form of a maximum. But the legal rate, "a rate established by the law"-L. Diez Picaso y Ponce de Leon, Fundamentos de derecho civil patrimonial, vol. I, 479 (1972)-by its nature will presumably be a certain fixed rate. At least historically this is so. J. Ma. Manresa y Navarro, supra, tome VIII, vol. I, 302, 303 (6th ed. 1967). Had the Commonwealth's Legislative Assembly intended these acts to deal with the legal interest rate, it is unlikely it would have used the word "maximum," it is unlikely it would have referred only to transactions where the legal rate is not at issue, and it is likely that it would have referred to that portion of Article 1061 that gives the government specific authority to change the legal, 6 percent, rate if it wishes to do so. In a word, we do not believe the acts to which Republic points are designed to change the legal rate of interest.
 
 
 26
 Third, Republic points out that under Commonwealth Law No. 17 of June 20, 1981, the interest rate that the Commonwealth collects on overdue taxes and other debts is far higher than the rate the Commonwealth's instrument-Aqueduct-will have to pay here. The unfairness of this, says Republic, is apparent. We nonetheless decline Republic's invitation to establish a higher legal rate under this provision both because it does not give this court the authority to do so and because doing so would create disparate interest rates in restitution cases, depending upon whether the defendant happened to be a branch of the government or a private party.
 
 
 27
 At oral argument, this court explored the possibility of allowing compound interest in a case of restitution. Compound interest may be awarded when provided by contract or by the law itself. L. Diez Picaso y Ponce de Leon, supra, vol. I, 481; J. Castan Tobenas, Derecho civil espanol, comun y foral, tome III, 65 (1962 ed.); Knights of Columbus Building Ass'n v. Arcilagos, 45 P.R.R. 89, 93 (1933). The contracts at issue here are silent on the matter, but the law of Puerto Rico is not. Article 1062 of the Civil Code, 31 L.P.R.A. 3026 (which embodies Article 1109 of the Civil Code of Spain) specifically refers to compound interest ("interest on interest"), stating:
 
 
 28
 Interest due shall earn legal interest from the time it is judicially demanded, even if the obligations should have been silent on this point.
 
 
 29
 This provision does not help Republic, however, for the Article does not provide compound interest as to a controverted claim (the amount of which must be established by judgment) prior to the making of that judgment. J. M. Manresa y Navarro, supra, tome VIII, 99 (1929 ed.). In this case, the claim was controverted and no definitive judgment was entered (due to reversal of the original case on this point in the Supreme Court of Puerto Rico) before the district court here reached its decision. Cf. Fairen Guillen, El momento de la produccion de la litispendencia segun la legislacion y la jurisprudencia actuales, 8 Revista General de Derecho 614, 621 (1952). In fact, Article 1062 hurts Republic, for the existence of that specific provision awarding compound interest in some circumstances and our inability to find any authority suggesting that the interest awarded under the restitution article, Article 1303, means compound interest, convinces us that we have no authority under the law of Puerto Rico to award its payment. Cf. Q. M. Scaevola, Codigo civil, tome XX, 1023-24 (2d ed. 1958).
 
 
 30
 In sum, the equity argument that Republic advances is more appropriately dealt with by the executive or legislative branch of the government of Puerto Rico-rather than by this court.
 
 
 31
 For these reasons the judgment of the district court is, on all points,
 
 
 32
 Affirmed.
 
 
 
 *
 Of the Eastern District of Virginia, sitting by designation
 
 
 [1]
 The text of Article 1255 of the Civil Code is set out at p. ---- infra
 
 
 [2]
 Both parties agree that the applicable statute of limitations is that of 15 years established by Article 1864 of the Civil Code, 31 L.P.R.A. § 5294. ("A mortgage action prescribes after twenty years, and those which are personal and for which no special term of prescription is fixed, after fifteen years.") It could be argued, however, that Republic's restitution claim should be governed, instead, by the four year statute of limitations that governs its sister action to annul the contract. Article 1253 of the Civil Code, 31 L.P.R.A. § 3512. Compare Agullo v. Administracion de Servicios al Consumidor, 104 D.P.R. 244 (1975). In neither case, however, does the statute of limitations bar Republic's restitution claim
 
 
 [3]
 Rule 17.1 of the Rules of Civil Procedure of Puerto Rico 1958, provided:
 Any number of persons may be joined in one action as plaintiffs or defendants if they assert or if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.
 Aqueduct's argument rests on the 1958 text of the Puerto Rico Rules of Civil Procedure, which were subsequently revised.
 
 
 [4]
 These two provisions-Article 1204 of the Civil Code and Article 421 of the Code of Civil Procedure-reflect different legal traditions. The first is taken from Articles 1251 and 1252 of the Spanish Civil Code; the latter has its immediate origin in California. Nevertheless, the Supreme Court of Puerto Rico has expressly held in Lausell Marxuach v. Diaz de Yanez, 103 D.P.R. 533, 535 (1975) that "the doctrine of res judicata, res judicata pro veritate habetur, is ... part of our Civil Law and except for comparative purposes we need not resort to other sources for its analysis."
 
 
 [5]
 Aqueduct also argues that the fact that Republic was assigned contract rights in a separate assignment contract somehow destroys identity of "capacity," but we fail to see how this makes a difference. Gomez Calero, La cosa juzgada, 59 Revista General de Legislacion y Jurisprudencia 420, 450-51 (1969) ("What the Civil Code means (by capacity) ... cannot be confused with the procedural situations of plaintiffs or defendants." Its reference is to "the substantive 'juridical conditions' "). See Mercado Riera v. Mercado Riera, 100 P.R.R. 939, 947 n.2 (1972)
 
 
 [6]
 We note that the Supreme Court of the United States said in Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979) that "(t)he general rule should be that in cases where a plaintiff could easily have joined in the earlier action ... a trial judge should not allow the use of offensive collateral estoppel." Nonetheless, it added that "trial courts (have) broad discretion to determine when it should be applied." The Supreme Court of Puerto Rico adopted this approach in A & P General Contractors, Inc. v. Asociacion Cana, Inc., 110 D.P.R. ---, ---, 81 J.T.S. 25 at 1904 (1981) motion for reconsideration filed March 25, 1981. Thus, even assuming that Aqueduct is right in asserting this is a collateral estoppel case, in order to accept Aqueduct's contention we would have to find an abuse by the trial judge of the "broad discretion" granted to him in this area. And there are no grounds for us to make such a finding in this case. It is relevant to point out that it was not until the Supreme Court of Puerto Rico interpreted the assignment contract between Mechanical and Republic that it became clear that Mechanical was not entitled to claim restitution from Aqueduct and that only Republic could do it
 
 
 [7]
 Compare the syllogism favored by the ancient Sophists: "If you have a cat, it is 'your cat.' If the cat has kittens, the cat is a 'mother.' Thus, if it is 'your cat' and also a 'mother,' it must be 'your mother.' "
 
 
 [8]
 Aqueduct alleges, moreover, that because Republic did not intervene in the case before the Puerto Rico courts it is estopped from bringing this suit. Again, we disagree. Casablanca v. Superior Court, 100 P.R.R. 201 (1971), the case invoked by Aqueduct, provides little support for its argument. The Supreme Court of Puerto Rico held in that case that the doctrine of estoppel "is only applicable where a party, relying on the truth of the acts or statements of another, is led to act in such a way that if the doctrine were not applied he would be prejudiced." Id. at 208-09. (Emphasis in original.) These elements of the estoppel doctrine are absent here. We do not see any reason for construing Republic's failure to intervene in the previous litigation as inconsistent with its contentions in this case. See Crossroads Development Corp. v. Estado Libre Asociado de Puerto Rico, 103 D.P.R. 789, 790 (1975); Lausell Marxuach v. Diaz de Yanez, 103 D.P.R. at 537-38 (1975). Aqueduct has not established that it was in any way misled by Republic's behavior. Velilla v. Pueblo Supermarkets, 111 D.P.R. ---, 81 J.T.S. 82 at 2199 (1981). Neither can we see in Republic's acts any abusive exercise of the legal principles involved or any antisocial conduct requiring the courts to deny a forum to its claim. Soriano Tavarez v. Rivera Anaya, 108 D.P.R. 663 (1979)
 
 
 [9]
 Rule 44.3. Legal Interest
 (a) Every judgment ordering the payment of money shall include legal interest to be computed on the amount of the judgment from the date it was entered up to the time of satisfaction thereof, without including costs and attorney's fees.
 (b) Except when the defendant is the Commonwealth of Puerto Rico, its municipalities, agencies, instrumentalities, or officers acting in their official capacity, the court may impose on an obstinate party the payment of legal interest to be computed on the amount of the judgment from the time the cause of action accrues in actions of debt, and in actions for damages, from the time the complaint is filed, until judgment is entered. The provisions of this paragraph shall be applicable to the causes of action filed after May 26, 1967.