# 2002 DTA 141

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO**

LA QUINTA S.E.
Demandante-Apelada

v.

ADELA MARTINEZ ROMERO DE GONZALEZ
Demandada-Apelante

Núm. KLAN-02-00668

San Juan, Puerto Rico, a 18 de septiembre de 2002

Panel integrado por su Presidente, el Juez Miranda De Hostos,
la Juez Hernández Torres y el Juez Martínez Torres

Martínez Torres, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante recurso de apelación comparece ante nos Adela Martínez Romero vda. de González, de aquí en adelante la codemandada-apelante. Solicita que revoquemos una sentencia sumaria parcial dictada el 20 de mayo de 2002, por el Tribunal de Primera Instancia, Sala Superior de Fajardo (Hon. Ismael R. Colón Pérez, Juez). En dicha sentencia se le ordenó a la codemandada-apelante, Martínez Romero vda. de González, a comparecer al otorgamiento de una escritura sobre dedicación a uso público de cierto predio de terreno localizado en el Municipio de Culebra. Por los fundamentos que expondremos a continuación, se confirma la sentencia apelada.

### I

El 6 de agosto de 1996, La Quinta S.E. radicó demanda sobre perturbación; *injunction* provisional; *injunction* preliminar; sentencia declaratoria; incumplimiento de contrato y daños y perjuicios contra Adela Martínez Romero vda. de González y la Sucesión de Miguel González Avila compuesta por: Adela Martínez Romero vda. de González, Carmen González Martínez, Adelita González Martínez también conocida como María Adelaida González Martínez, Miguelita González Martínez, también conocida como María Miguelina González Martínez y Hadla Luz González Martínez.

A pesar de que la demanda incluye una serie de causas de acción, la controversia ante nos se circunscribe a la segunda de ellas. En síntesis, se expuso en la demanda que La Quinta S.E. le compró a las demandadas un terreno en el Municipio de Culebra con el propósito de construir un proyecto turístico-residencial.

Alegó la aquí demandante-apelada, La Quinta S.E., que como parte de unos acuerdos, las demandadas se obligaron a ceder para uso público los terrenos de su propiedad que servirían de acceso al proyecto. También alegó que ya se construyó el referido acceso, pero las demandadas se han negado a ceder o dedicar para uso público el predio en controversia, el cual consta de 295.27 metros cuadrados.

Luego de radicarse la contestación de la demanda, las partes realizaron un extenso descubrimiento de prueba. El 24 de septiembre de 1999, la aquí demandante-apelada, La Quinta S.E., radicó una moción de

sentencia sumaria parcial a los fines de resolver la segunda causa de acción presentada en la demanda.

El 3 de marzo de 2000, las demandadas Romero Martínez y la Sucesión de Miguel González Avila presentaron su oposición a sentencia sumaria. Anejaron a la oposición un plano, copia simple de la Escritura Número 9 otorgada ante el Notario Héctor Santiago Rivera, y una declaración jurada de la señora Carmen Georgina González Martínez. En síntesis, alegaron que la demandante-apelada, La Quinta S.E., intenta variar las servidumbres que constan en el Registro de la Propiedad; que no ha traído al pleito a una parte indispensable (señora Carmen Georgina González Martínez, alegada dueña de la parcela identificada como el solar Núm. 1 del Anejo II); y que no hubo acuerdos verbales sobre modificación del contrato original entre las partes.

Luego de aquilatada la moción de sentencia sumaria y su oposición, el Tribunal de Primera Instancia declaró sin lugar la moción de sentencia sumaria. Inconforme, la demandante, La Quinta S.E., acudió ante este Tribunal de Circuito de Apelaciones mediante petición de *certiorari* (KLCE-01-00988). Este foro apelativo, en sentencia de 17 de septiembre de 2001, expidió el auto de *certiorari* y ordenó al Tribunal de Primera Instancia a emitir un dictamen debidamente fundamentado.

El 20 de mayo de 2002, el Tribunal de Primera instancia dictó la sentencia sumaria parcial objeto de este recurso. En la misma, declaró con lugar la moción de sentencia sumaria solicitada por la demandante-apelada, La Quinta S.E., por no encontrar una controversia genuina de hechos y por proceder como cuestión de derecho. A esos efectos, ordenó a la codemandada-apelante, Adela Martínez Romero vda. de González, a comparecer al otorgamiento de una escritura pública, en la cual deberá ceder al Municipio de Culebra el predio en controversia, para fines de uso público.

Inconforme con esa determinación, acude ante nos Adela Martínez Romero vda. de González. Alega que el tribunal erró al dictar sentencia sumaria a pesar de existir una genuina controversia de hechos y al no resolver que falta en el pleito una parte indispensable.

Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

La moción de sentencia sumaria es aquélla en donde se solicita al tribunal que dicte sentencia a favor del promovente, basándose en la prueba que a la moción se acompaña, sin necesidad de que se celebre vista en su fondo, y en casos donde en realidad no exista controversia real sobre ningún hecho material en el caso. *Jusino Figueroa v. Walgreens of San Patricio,* Opinión de 1 de noviembre de 2001, **2001 J.T.S. 154**.

Cuando el que solicita que se dicte sentencia sumaria cumplió con la obligación de demostrar que no hay controversia en cuanto a los hechos y que procede que se dicte sentencia sumaria como cuestión de derecho, la otra parte contra quien se solicita la sentencia no puede derrotar la moción cruzándose de brazos y descansar en lo expuesto en las alegaciones de la demanda. Para derrotar la moción, tendrá que demostrar que tiene prueba para sustentar sus alegaciones. *Audiovisual Language v. Sistema de Estacionamiento Natal Hnos.,* 144 D.P.R. 563 (1997); Dr. José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, **Publicaciones J.T.S**, T.I. 2000, a la pág. 608.

Como regla general, procede que se dicte sentencia sumaria a base de las declaraciones juradas y los documentos admisibles en evidencia sometidos por la parte promovente junto con su moción, los documentos sometidos por la parte promovida en su moción en oposición y aquéllos que obran en el expediente del tribunal. *Medina v. M.S. & D. Química P.R., Inc.,* 135 D.P.R. 716 (1994). En segundo lugar, el tribunal determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos presentados. *PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra*, a la pág. 913.

El tribunal no deberá dictar sentencia sumaria cuando (1) existan hechos materiales controvertidos; (2) hayan alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controverdia real sobre algún hecho material, o (4) cuando no proceda como cuestión de derecho. *Id.*, a las págs. 913-914; *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272, 280 (1990).

### III

Al analizar la moción de sentencia sumaria, la oposición y los documentos anejados a éstas, se desprende que el 29 de noviembre de 1974, mediante escritura pública otorgada ante el Notario Público Guillermo Cintrón Ayuso, Don Miguel González Avila y Doña Adela Martínez Romero segregaron la finca Clark, también conocida como La Quinta, localizada en el Barrio Sardinas en el Municipio de Culebra. Mediante la escritura antes mencionada, se segregó la finca en 15 parcelas de aproximadamente cinco cuerdas (parcelas 1 a 14) y un remanente de 80.36 cuerdas. Sentencia Sumaria Parcial, Determinaciones de Hechos Núms. 1 y 2, pág. 4; Ap. Apel., pág. 5. Esta determinación de hecho no fue controvertida. Véase además, Ap. Apel., pág. 41-54.

El 26 de abril de 1985, Don Miguel Avila falleció, dejando como albaceas de la Sucesión a su esposa, Doña Adela Martínez Romero y a su hija, Doña Georgina González Martínez. <u>Id.</u>, Determinación de Hecho Núm 10, pág. 5; Ap. Apel., pág. 6. Esta determinación de hecho tampoco fue controvertida.

Durante el mes de febrero de 1989, el arquitecto Pedro Rodríguez Flores, socio gestor de la parte demandante, La Quinta, S.E., junto a su esposa, Susan Hubbel Shewry, suscribieron un contrato de opción de compra para la adquisición de las parcelas (3), (4), (5) y (6) de la finca Clark, perteneciente a la demandada, Sucesión González. El total de área de estos solares es de 21.171 cuerdas. *Id.*, Determinación de Hecho Núm 11, pág. 5; Ap. Apel., pág. 6. Esta determinación de hecho tampoco se controvirtió.

Una vez se suscribió el contrato de opción, la demandada Sucesión González, titular de la finca Clark, por conducto del Arq. Pedro Rodríguez Flores, presentó una Consulta de Ubicación ante la Junta de Planificación para la segregación de 17 solares con cabida mínima de una cuerda en las parcelas 3, 4, 5 y 6, bajo el número de consulta 89-77-0689 JPU. A dicho proyecto se le llamó Las Quintas de Culebra o La Quinta, nombre por el cual ya se conocía a esa parte de la finca Clark. *Id.*, Determinación de Hecho Núm. 12, pág. 5; Ap. Apel., pág. 66. Véase además, Ap. Apel., pág. 66.

Se propuso que el proyecto de lotificación tendría acceso vehicular mediante calles asfaltadas con servidumbres de 13.0 metros en la calle principal y de 10.0 metros en la calle local. Ap. Apel., pág. 66. El 18 de mayo de 1989, la Junta de Planificación denegó el proyecto, ya que las segregaciones propuestas carecen de un acceso público, entre otras razones. Ap. Apel., pág. 89.

Mediante Escritura Pública número 9 del 29 de agosto de 1989, ante el Notario Público Héctor Santiago Rivera, la demandante, La Quinta, S.E., adquirió por compra de la Sucesión González los solares 3, 4, 5 y 6 de la finca Clark o La Quinta. Posteriormente, se presentó una solicitud de reconsideración ante la Junta de Planificación sobre la denegatoria al proyecto propuesto, por lo que se realizó una vista publica. Ap. Apel., pág. 95.

El 5 de enero de 1990, la Junta de Planificación dictó una resolución en la que aprobó, de forma condicionada, la consulta de ubicación propuesta. Ap. Apel., pág. 95. Entre sus determinaciones de hechos, la Junta de Planificación expuso que existían ciertas interrogantes sobre la existencia de un acceso público adecuado. Expresó la Junta que esa interrogante podía salvarse si el proponente demostraba que tiene autoridad para construir la calle de 13 metros de acceso desde la vía pública y transferir la misma al Municipio como calle pública. Ap. Apel., pág. 90.

La Junta de Planificación también expuso que el Municipio de Culebra ratificó el endoso a la consulta sujeto a que se mantengan los accesos ya establecidos en los referidos documentos. Ap. Apel., pág. 91. Por lo tanto, la Junta de Planificación condicionó la aprobación del proyecto a que se dedicara y construyera una vía pública de 13.0 metros pavimentada desde el proyecto hasta la vía pública más cercana. Ap. Apel., pág. 94. También se resolvió que previo a tramitar el desarrollo ante la Administración de Reglamentos y Permisos (A. R.P.E.), el proponente tendría que mostrar evidencia de que está autorizado para construir la calle de 13.0 metros de acceso desde la vía pública y transferir la misma al Municipio como calle pública. *Id.*

El 29 de agosto de 1990, la demandada-apelante, como albacea de la Sucesión González, autorizó que se gestionaran servidumbres de paso por la propiedad de la Sucesión según los requisitos de la Junta de Planificación. Ap. Apel., pág. 97.

En septiembre de 1990, la demandante-apelada, La Quinta S.E., por conducto del Arq. Pedro Rodríguez Flores, radicó ante la A.R.P.E. un plano de desarrollo preliminar para el proyecto turístico residencial en los lotes 3, 4, 5 y 6 de las Finca Clark. El 10 de septiembre de 1990, la A.R.P.E. denegó el plano de desarrollo preliminar radicado, toda vez que no se había evidenciado que el proyecto contaba con acceso público adecuado. Ap. Apel., pág. 99.

A.R.P.E. expuso que el 17 de agosto y 5 de noviembre de 1990 recibió cartas suscritas por la Sra. Julia Perkins, propietaria del lote 7 de la finca Clark y de la demandada-apelante, Martínez vda. de González, albacea de la sucesión González, propietaria del lote 8 y del remanente de la finca Clark. Expresó A.R.P.E. que en las referidas cartas estas personas **indicaron no tener objeción alguna de segregar y dedicar a uso público, mediante escritura a favor del Municipio de Culebra, las franjas de terreno necesarias que servirían de acceso al proyecto propuesto**. Ap. Apel., pág. 99. Por su importancia, transcribimos el contenido de la carta suscrita por la demandada-apelante, Martínez Romero vda. de González:

*"Re: Desarrollo Preliminar La Quinta*

*Caso Número 90-77-A-441 CPD*

*La presente es para hacerle informar a la Oficina de Reglamentos y Permisos (A.R.P.E.) que el Arq. Pedro Rodríguez Flores está autorizado a que en nuestro nombre radique ante la A.R.P.E. unas segregaciones de nuestros solares de la Finca Las Quintas de Culebra, conforme al plano de desarrollo preliminar por nosotros aceptado y suscrito el cual se acompaña.*

*Una vez aprobadas dichas segregaciones **nos comprometemos mediante escritura pública a dedicar a uso público a favor del Municipio de Culebra y/o Recursos Naturales según corresponda, dichas segregaciones que servirán de camino público para el acceso del desarrollo de la finca La Quinta**.*

*Se ha autorizado además al Arq. Pedro Rodríguez Flores que someta cualquier documento o información adicional que le sea requerido.*

*Att.(fdo.) Adela Martínez Vda. de González en representación de la Sucn. González.*
*Fechada el 5 de noviembre de 1990."*

[Ap. Apel., pág. 98; énfasis suplido]

El 15 de noviembre de 1990, A.R.P.E. acordó considerar una petición de reconsideración presentada por la aquí demandante-apelada, La Quinta S.E., el 5 de noviembre de 1990. Ap. Apel., pág. 99.

El 15 de mayo de 1992, la A.R.P.E. aprobó el plano de desarrollo preliminar para el proyecto residencial-turístico en los lotes 3, 4, 5 y 6 de la finca Clark. Ap. Apel., págs. 99-104. Como parte de los requerimientos y recomendaciones de su resolución, A.R.P.E. aclaró que *"previo a la inscripción de solares, se deberá haber dedicado a uso público, mediante escritura, a favor del Municipio de Culebra, aquellas fajas de terreno que constituirán calles de acceso, incluyendo las que afectan los lotes 7 y 8 y el remanente de la finca Clark."* Ap. Apel., pág. 101; énfasis suplido.

Por otro lado, A.R.P.E. aclaró que la *"segregación de las fajas de terreno que constituirán el acceso al proyecto **a través de los lotes 7 y 8 de la finca Clark y por el remanente de dicha finca**, se llevará a cabo ante la Oficina Regional de San Juan de esta Administración"*. Ap. Apel., pág. 102; énfasis suplido.

Posteriormente, la aquí demandante-apelada, La Quinta S.E., sometió ante la Oficina Regional de San Juan de la A.R.P.E., el plano de inscripción de parcelas para su dedicación y cesión a uso público. Entre las parcelas para las cuales se solicitó segregación para uso público, se encuentra la Calle Núm. 1 (Sec. 5(A), con cabida de 295.2750 metros cuadrados. A.R.P.E. expresó que dicha parcela **procede de la finca principal (remanente) inscrita al folio Número 6 del Tomo Número 7, finca número 290 de Culebra.** El 29 de junio de 1995, A.R. P.E. finalmente aprobó el plano de inscripción de las parcelas y solares descritos. Ap. Apel., pág. 108.

Además, A.R.P.E. dispuso como condición *sine qua non* que *"para futuras solicitudes de inscripción de solares del proyecto, la parte proponente deberá someter evidencia escrita, de haber terminado ante el Registrador de la Propiedad correspondiente, de la dedicación y cesión a uso público de las parcelas aquí incluidas a favor de las entidades y/o agencias gubernamentales concernidas"*. Ap. Apel., pág. 109.

Es importante destacar que en la referida aprobación de A.R.P.E., ésta reconoció que el Municipio de Culebra, mediante carta del 28 de febrero de 1995, endosó y aprobó las obras de las calles a dedicarse a uso público, **las cuales ya estaban construidas y fueron inspeccionadas.** Ap. Apel., págs. 110 y 114. Por otro lado, la Asamblea Municipal de Culebra aprobó una resolución (Núm 12, Serie 1994-95), en la que autorizó al Alcalde de Culebra a comparecer mediante escritura pública para la segregación y dedicación de tales obras. Ap. Apel., págs. 114-116.

El 23 de noviembre de 1995, la sucesión de González Avila radicó ante A.R.P.E. una solicitud para la radicación de un desarrollo preliminar. Interesaban que se le cambiara la zonificación del remanente de la finca Clark con cabida de 78.252 cuerdas, inscrita al folio 6 del Tomo 7, Finca 290. Ap. Apel. pág. 119.

El 18 de agosto de 1997, mediante Escritura de Partición Total y Adjudicación de Bienes Hereditarios, se le adjudicó a la demandada-apelante, Martínez vda. de González, **el remanente de la finca principal Clark con una cabida de 78.252 cuerdas de terreno.** Ap. Apel., págs. 125-140. Este hecho no fue controvertido por la demandada-apelante, Martínez Romero vda. de González.

El 1 de diciembre de 1997, la demandada-apelante, Martínez vda. de González, sometió ante la Junta de Planificación una solicitud de desarrollo preliminar de cierto proyecto en el remanente de la finca Clark, ahora de su exclusiva propiedad. En su memorial explicativo expuso que la *"finca objeto de este desarrollo está dotada de una carretera Municipal asfaltada y con las instalaciones para los servicios básicos que fueron construidos para las estructuras residenciales existentes"*. Ap. Apel., págs. 141-144.

En su moción de sentencia sumaria, la demandante-apelada, La Quinta S.E., expresó que los hechos no se encuentran en controversia, por lo que *"procede dictar sentencia sumaria parcial...en vista de los actos ejecutados y ratificados por ésta (la demandante-apelada, Martínez vda. de González) para dedicar a uso público el acceso o calle y por el acto formal del Municipio de Culebra aceptando el acceso o calle, todo lo anterior bajo la doctrina de derecho de dedicación o consagración a uso público"*. Moción de Sentencia

Sumaria, pág. 9; Ap. Apel., pág. 32.

La demandante-apelante, Martínez vda. de González, se opuso escuetamente a la moción de sentencia sumaria. En síntesis, alega que la demandante-apelada, la Quinta, S.E. *"pretende variar la servidumbre de paso y establecer una nueva por la parcela número 1, propiedad de la Sra. Georgina González, la cual adquirió de su padre mediante Escritura número 37, otorgada el día 7 de diciembre de 1971, ante el Notario Gaspar Gerena Bras"*. Oposición a Sentencia Sumaria pág. 4; Ap. Apel., pág. 51. A esos efectos, Martínez vda. de González, alega que la Quinta S.E. no unió al pleito a la Sra. Georgina González, supuesta parte indispensable. *Id.*

La única documentación que la codemandante-apelada, Martínez vda. de González, aneja a su moción en oposición a sentencia sumaria es la escritura de compraventa e hipoteca otorgada por las demandadas y la demandante-apelada, La Quinta S.E.; un plano o mapa del área y una declaración jurada suscrita por Carmen Georgina González Martínez, una de las componentes de la extinta Sucesión González.

En la declaración jurada, González Martínez expone que el solar número 1 (de un plano sin fecha incluido como Exhibit) nunca ha sido propiedad de la Sucesión González, sino de ella. También declaró que dicho solar ha sido *"invadido"* por la demandante-apelada, La Quinta S.E., y que esta última utiliza el solar para transportar sus materiales. Ap. Apel., pág. 170.

Al respecto, valga destacar que este caso no versa sobre la titularidad del alegado solar número 1 o si sobre el mismo se tratan de variar servidumbres. Cónsono con lo anterior, resulta importante destacar que del propio plano incluido como exhibit se puede apreciar un solar marcado con el número uno, y que tiene a su izquierda e **independiente al solar** un camino marcado o **identificado como que está dedicado a uso público**. Ap. Apel., pág 169.

Al analizar todos estos elementos en conjunto, resolvemos que la codemandada-apelante, Martínez vda. de González, no logró rebatir que los documentos de A.R.P.E. y de la Junta de Planificación se refieren a que el acceso público se hará en los lotes 7 y 8 de la Finca Clark y el remanente de dicha finca. Tampoco rebate que dicho remanente le fue adjudicado mediante la escritura de partición antes mencionada. En otras palabras, la codemandada-apelante, Martínez vda. de González, no rebatió que el predio identificado por A.R.P.E. en su resolución de 29 de junio de 1995 es de su propiedad y que sobre el mismo estableció una promesa de dedicación a uso público, la cual llevó a las agencias correspondientes a la aprobación del proyecto turístico residencial de la demandante-apelada, La Quinta, S.E. No habiéndose rebatido esos hechos, no procede decir entonces que en el pleito falta una parte indispensable. El camino a ser público pasa por terrenos de la demandante-apelante, no de otra persona. Como vimos, ese hecho no fue controvertidos.

Los documentos presentados por la demandante-apelada, La Quinta S.E., en su moción de sentencia sumaria, no fueron controvertidos satisfactoriamente por los documentos presentados por la codemandada-apelante, Martínez vda. de González. Por lo tanto, no erró el tribunal al resolver que los hechos materiales no están en controversia.

### IV

Ahora procede determinar si como cuestión de derecho procedía que se dictara sentencia sumaria.

Una dedicación es una donación o asignación de propiedad al uso público por el dueño, aceptada por el público. Puede ser hecha de palabra o por escrito; puede ser evidenciada por palabras o actos; por una declaración o actuación inequívoca, o por un curso de conducta revelando un claro propósito de dedicar. *Capella v. Carreras*, 48 D.P.R. 830 (1935). Como expondremos más adelante, esta figura proviene del Common Law.

En 23 Am. Jur. 2d. sec. 1, la doctrina de la dedicación se define de forma similar:

*"More specifically, dedication has been defined as an appropiation of realty by the owner to the use of the public and the adoption thereof by the public having respect to the possession of the land and not of the permanent estate. Dedication may be express, as when made by oral declaration, or by deed or note; or it may be implied, as when there is an acquiescence in a public use. In short, dedication is the setting aside of land for a public use."*

La característica esencial de la dedicación es que la propiedad tiene que ser usada por el público en términos generales y no por una persona o número limitado de personas. *Id.* sec. 5. Como requisito esencial para una dedicación válida, la dedicación tiene que ser hecha por el predio en controversia o al menos con su consentimiento. *Id.* sec. 15.

Precisamente, uno de los usos más comunes de la dedicación es brindar terreno para avenidas y carreteras. *Id.* sec. 8.

Como vimos, para que surja una dedicación, tiene que existir una oferta por parte del dueño del predio y además, una aceptación. La oferta de dedicación se puede hacer de forma expresa, por una escritura o por un plano. La existencia de la oferta es una cuestión de hecho a ser determinada por el tribunal. *Id.* sec. 22; Véase además, *Municipio de Vega Baja v. Smith*, 27 D.P.R. 632 (1918).

El requisito de intención de la parte que propone la dedicación es de suma importancia. Esa intención podrá ser manifestada por actos y declaraciones. De dicho acto se tiene que deducir una intención positiva de dedicar la propiedad al·uso público. *Id.* sec. 27. Véase además, *Miami Beach v. Miami Beach Improv. Co.*, 14 So 2d 172.

No obstante lo anterior, también se ha dicho lo siguiente sobre el requisito de intención:

*"Under certain circumstances actual intent to dedicate may not be necessary. Thus, **where acts of the owner justify the public authorities in believing the intention exists and they act on such belief, a dedication may be found to have ocurred,** although the owner never actually intended a dedication. And even where an owner specifically expresses an intention not to dedicate certain property, his subsequent acts may be sufficient to override that expression of intention."*

[*Id.* sec. 23.]

La figura del *estoppel* podría levantarse en determinadas circunstancias en donde ha surgido una *"dedicación incompleta"* o cuando las actuaciones de la persona dan a entender una dedicación implícita. *Id.* sec. 24; *Conway v. Board of County Comrs.*, 237 A 2d 795.

El Tribunal Supremo de Puerto Rico ha resuelto varios casos en los cuales se ha adoptado en esta jurisdicción, hasta cierto punto, la doctrina de la ley común sobre la consagración implícita basada en *estoppel in pais. Figueroa v. Guerra Mondragón*, 69 D.P.R. 607 (1949). Por ejemplo, en *Capella v. Carreras, supra*, se trataba sobre una situación especial. Se adquirió un solar que formaba parte de una urbanización trazada de conformidad con un plano en solares, cuadras y calles. Obviamente, expresó el Tribunal, bajo tales circunstancias, un dueño de un solar no puede negarle a los dueños de los otros solares y al público en general, el derecho de usar las calles trazadas en el plano para beneficio de todos los solares. Todos los casos en que se apoyó el caso de *Capella* versaban sobre planos similares. Véase además, *Ferrer vda. de Lugo v. Varela*, 71 D. P.R. 76 (1950).

En *Crossroads Development v. E.L.A.*, 103 D.P.R. 789 (1975), el Tribunal Supremo se refirió nuevamente a la doctrina de la consagración, aunque tangencialmente. En dicho caso, la recurrida adquirió una finca rústica de alrededor de trece cuerdas y luego sometió ante la Junta de Planificación un plano de inscripción para la segregación de la finca en tres parcelas. La Junta de Planificación aprobó la segregación con la condición de que la recurrida *"dedicara"* a uso público la parcela B y *"reservara"* para uso público la parcela C. La recurrida no cuestionó el requerimiento de la Junta de Planificación, sino que procedió de conformidad. Posteriormente, la recurrida sometió ante la Junta de Planificación un anteproyecto para la construcción de un edificio comercial y una estación de gasolina en la parcela B. La Junta denegó el proyecto. Inconforme, la recurrida presentó una demanda de reivindicación e impugnó el título del Estado sobre la parcela. El tribunal inferior resolvió a favor de la recurrida bajo el fundamento de que el Estado sólo podía requerir la dedicación para uso público cuando el trazado de la carretera constaba en un plano oficial.

El Tribunal Supremo en *Crossroads, supra*, revocó al tribunal inferior y expuso lo siguiente:

*"El tribunal de instancia pasó por alto la defensa de estoppel y no tomó en consideración el obstáculo procesal que le impedía entrar en los méritos de la impugnación pretendida por la recurrida. Como ya vimos, ésta no cuestionó la dedicación de la parcela B requerida por la Junta de Planificación, en septiembre de 1966. Más aún procedió de conformidad reconociendo implícitamente su validez al no valerse de los remedios judiciales que tenía a su disposición para cuestionarla. El mandamus y la sentencia declaratoria eran remedios adecuados para plantear directamente en el tribunal de instancia la impugnación que hizo colateralmente casi cuatro años más tarde al instar la demanda de reivindicación en este caso. La aprobación del plano de inscripción le permitió a la recurrida vender la parcel `A´ a Gems de Puerto Rico, Inc., cuyo valor sin duda alguna, quedaba afectado favorablemente por la futura prolongación de la Avenida Central. Permitirle ahora a la recurrida ir sobre sus propios actos sería contrario a la equidad y al proceso racional, continuo y ordenado de controlar y dirigir el desarrollo urbano."*

[*Crossroads Dev. Corp. v. E.L.A., supra.*]

Al evaluar en conjunto los documentos y alegaciones no controvertidas en este caso, podemos concluir razonablememte que la demandada-apelante realizó actos indicativos de su intención de ceder para uso público los terrenos de su propiedad y que servirían de acceso al proyecto turístico-residencial de la demandante-apelada, La Quinta, S.E. Ello se deduce razonablemente de la carta dirigida a la A.R.P.E. en la cual Martínez Romero vda. de González expresó que no tenía objeción alguna en segregar y dedicar a uso público, mediante escritura a favor del Municipio de Culebra, las franjas de terreno necesarias que servirían de acceso al proyecto propuesto.

Más aún, la codemandada-apelante, Martínez Romero vda. de González, no controvirtió que la franja de terreno en controversia ya fue habilitada como calle y que la misma también fue inspeccionada. Tampoco se desprende que se opusiera a esas obras de construcción. Del expediente tampoco se desprende que la codemandada-apelante, Martínez Romero vda. de González, se opusiera a la aprobación de los planos de inscripción hechos por A.R.P.E., los cuales hacen referencia directa a su propiedad. Por otro lado, tampoco se desprende que en algún momento Martínez Romero vda. de González se opusiera a la aceptación del predio por el Municipio de Culebra.

Por lo tanto, de los hechos incontrovertidos por la codemandada-apelante, Martínez Romero vda. de González, podemos concluir que ella tuvo la intención de dedicar a uso público la referida franja de terreno. Tampoco erró el tribunal al concluir eso.

## V

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General